IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEVEN BENEZRA and MELISSA          )
YORK,                               )
                                    )
     Plaintiffs,                    )
                                    )
     v.                             )          No. 1:11-CV-596
                                    )
ZACKS INVESTMENT RESEARCH,          )
INC., ZACKS INVESTMENT              )
MANAGEMENT, INC., LEONARD           )
HARVEY ZACKS, BENJAMIN LAIB         )
ZACKS, and MITCHEL ETHAN            )
ZACKS,                              )
                                    )
     Defendants.                    )
                                    )
_____)

### <u>MEMORANDUM OPINION AND ORDER</u>

THOMAS D. SCHROEDER, District Judge.

Plaintiffs Steven Benezra ("Benezra") and Melissa York ("York") assert claims arising from their investment adviser relationship with Defendants. Before the court is Defendants' motion to compel arbitration and to dismiss or stay this case. (Docs. 11, 18.) Defendants also move to strike Plaintiffs' response to the motion as untimely. (Doc. 16.) For the reasons set out below, the court will deny the motion to strike, grant the motion to compel arbitration with respect to Benezra, dismiss the claims of York without prejudice, and stay further proceedings pending arbitration.

## I. BACKGROUND

This initial state court action was removed to this court pursuant to 28 U.S.C. § 1441(b) based on federal question jurisdiction, supplemental jurisdiction, and, in the alternative, diversity jurisdiction (Doc. 1 ¶¶ 9-11). Plaintiffs' initial complaint sought damages under a number of legal theories from Benezra's investment of funds with Defendants. (See Doc. 1-1.)

On August 2, 2011, after removal, Defendants moved pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., for an order compelling Plaintiffs to arbitrate all claims and to dismiss or stay all proceedings. (Doc. 11.) In support of their motion, Defendants submitted an "Investment Advisory Agreement" ("IAA") signed by Benezra, which contains the following clause:

> 18. <u>Arbitration</u>. I [Benezra] hereby waive my right to seek remedies in any court or before any governmental agency, including any right to a jury trial. In the event of any dispute between us arising out of, relating to or in connection with this Agreement, such dispute shall be resolved exclusively by arbitration in Cook County in the state of Illinois, under the auspices of JAMS. No punitive damages shall be awarded. Any award rendered by the arbitrator shall be final and binding, and judgment may be entered upon it in any court of competent jurisdiction in Cook County in the state of Illinois or as otherwise provided by law.

(Doc. 11-1 IAA ¶ 18.)  Although it contains the notation "Agreed to and Accepted by: ZACKS INVESTMENT MANAGEMENT, INC. ["ZIM"]," the IAA contains no signature by any representative in the space provided.  (Id. at 6.)

On August 9, 2011, Plaintiffs' counsel, upon receiving Defendants' motion, informed all Defendants that because ZIM failed to execute the IAA, there was no binding contract and Plaintiffs were withdrawing their "signature and perceived assent" to the IAA.  (Doc. 14-2.)

On August 18, 2011, Plaintiffs filed their unverified First Amended Complaint ("FAC"), which asserts claims for fraud in the inducement, rescission, breach of fiduciary duty in violation of the Investment Advisers Act of 1940, violation of the Securities and Exchange Act of 1934, violation of the North Carolina Securities Act, unfair and deceptive trade practices, declaratory relief, and false advertising related to the investment of $550,000 of Benezra's retirement fund with Defendant ZIM.  (Doc. 13.)  Also named as Defendants are Zacks Investment Research, Inc. ("ZIR"), parent company of ZIM, and Leonard Harvey Zacks, Benjamin Laib Zacks, and Mitchel Ethan Zacks, all of whom are officers or directors of ZIM or ZIR. (Id. 13 ¶ 7; Doc. 11-1 Frank C. Lanza Affidavit ("Lanza Aff.") ¶ 5.)

Plaintiffs contend that they invested $550,000 with ZIM on September 30, 2008, based on Defendants' misrepresentation that the funds would be invested in "#1 Rank" stocks (defined in the FAC as the top 200 stocks from a "universe" of over 4,000 researched stocks). (Doc. 13 ¶¶ 10-23.) After suffering losses, Plaintiffs allege, Benezra directed ZIM on January 5, 2009, to "pull his cash out of the account and return his money to him." (Id. ¶ 66.) Plaintiffs claim that, as a result of fraud, "Benezra suffered the loss, in just a few weeks, of $80,156.99." (Id. ¶ 67.) Plaintiffs seek general, exemplary and/or treble damages, as well as other relief. (Id. at 46-47.)

On August 31, 2011, after the period for responding to the motion to compel expired, Plaintiffs filed an opposition and response. (Docs. 14, 15.) Defendants in turn moved to strike Plaintiffs' opposition as untimely. (Doc. 16.) Apparently out of an abundance of caution, Defendants renewed their motion to compel on September 2, 2011. (Doc. 18.) This led to a flurry of motions and briefing (Plaintiffs filing six, and Defendants filing four). All motions are now ripe for decision.

## II. ANALYSIS

### A. Defendants' Motion to Strike

Defendants move to strike Plaintiffs' response to the motion to compel arbitration as untimely. Defendants also argue that Plaintiffs' FAC, which was filed shortly after the motion

4

to compel arbitration, cannot be considered a proper response. Thus, Defendants reason, their motion to compel should be treated as an uncontested motion under Local Rule 7.3(k) (providing discretion to consider motion as uncontested).

Plaintiffs timely filed the FAC within 21 days of Defendants' motion to compel, which also contained motions under Federal Rule of Civil Procedure 12(b). Federal Rule of Civil Procedure 15(a)(1)(B) permits a plaintiff to amend a complaint as a matter of course within 21 days of a motion under Rule 12(b), (e) or (f). One purpose of this rule is to expedite determinations of issues that otherwise might be raised seriatim. Fed. R. Civ. P. Rule 15, 2009 advisory committee notes. Here, the FAC was filed as a matter of right and alleged that the IAA (containing the arbitration clause) was not properly executed. Thus, the court will consider the FAC as having mooted the motion to dismiss. See Colin v. Marconi Commerce Sys. Employees' Ret. Plan, 335 F. Supp. 2d 590, 614 (M.D.N.C. 2004) (holding moot defendants' motion to dismiss filed prior to amended complaint). Because the motion to compel arbitration was integral to Defendants' motions and the FAC alleged that the IAA was never valid, and because the parties have nevertheless now fully briefed the motion to compel arbitration, the court declines to consider the motion to compel

5

to be an uncontested motion and will consider all the briefing. The motion to strike (Doc. 16) will therefore be denied.

**B.   Defendants' Motion to Compel Arbitration**

Relying on the arbitration clause in the IAA, Defendants move pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) for an order that compels Plaintiffs to arbitrate all claims and either dismisses those claims or, in the alternative, stays this case pending completion of the arbitration.  (Doc. 11 at 4-5; Doc. 18.)  Plaintiffs contend that they are not bound by the arbitration clause because, they have now come to learn, Defendants failed to execute the IAA containing it and, if the IAA is enforceable, they were fraudulently induced into agreeing to its arbitration clause. Defendants contend that Benezra agreed to the IAA and the arbitration provision contained in it and that all of Plaintiffs' claims are subject to arbitration.  Both parties accept that if the arbitration provision was agreed to, the FAA applies.[1]

---

[1] The FAA applies to a written provision to arbitrate in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2.  Commerce is defined broadly under the FAA.  Id. § 1. The parties reside in different states, and the transactions related to the IAA were conducted across state lines through interstate commerce.  (See Doc. 1 ¶¶ 7-8, 11; Doc. 13 ¶¶ 1-2, 14-27, 31, 74-78, 92-98, 102-03, 184 (alleging use of interstate commerce).)  Thus, the FAA applies provided the court determines the parties entered into a

The party seeking to compel arbitration must establish an agreement to arbitrate. See In re Mercury Constr. Corp., 656 F.2d 933, 939 (4th Cir. 1981), aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983); see Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (requiring litigant seeking to compel arbitration to demonstrate "a written agreement that includes an arbitration provision which purports to cover the dispute"). A court may order arbitration of a dispute only where it is satisfied that the parties entered into an agreement to arbitrate it. Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2856 (2010) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). In this case, Plaintiffs challenge both the formation of the arbitration provision as well as its scope.

Disputes as to contract formation are "generally for the courts to decide," Granite Rock, 130 S. Ct. at 2855-56, applying ordinary state-law principles of contract law, Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (also noting that generally applicable contract defenses such as

---

valid agreement to arbitrate. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001) (noting Court had interpreted FAA "as implementing Congress' intent to exercise its commerce power in full" (alterations and internal quotation marks omitted)). Further, the FAA preempts conflicting state law. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272 (1995) ("[S]tate courts cannot apply state statutes that invalidate arbitration agreements." (citing Southland Corp. v. Keating, 465 U.S. 1, 15-16 (1984))).

fraud, duress, or unconscionability may be applied to invalidate arbitration agreements). In resolving such disputes, "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce," including whether the clause was agreed to. Granite Rock, 130 S. Ct. at 2856. "[T]he FAA was intended to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Am. Gen. Life, 429 F.3d at 87 (internal quotation marks and citations omitted). Challenges to the scope of an arbitration provision, therefore, are also for the court to decide.[2] Id. Because substantive federal arbitration law declares an arbitration provision severable from the remainder of the contract, however, a general challenge to the contract containing an arbitration provision (e.g., that the contract is usurious or against public policy) must be left to the arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006).

The question, therefore, is whether the parties agreed to the arbitration clause contained in the IAA. If so, the court will consider the scope of the arbitration clause, i.e., which Plaintiffs' claims, if any, are subject to arbitration.

---

[2] The only exception, not relevant here, is when there is "clear and unmistakable" evidence the parties agreed to arbitrate the question of arbitrability. Granite Rock, 130 S. Ct. at 2858; First Options, 514 U.S. at 942-43.

### 1. Existence of Valid Arbitration Agreement

Plaintiffs argue that Benezra did not enter into the IAA, and thus its arbitration provision, because he revoked his "offer" before ZIM ever signed it. (E.g., Doc. 14 at 2-3; Doc. 22 at 2-3.) Plaintiffs also point to paragraph 16 of the IAA, which states, in part, "This Agreement shall not become binding on you [ZIM] unless accepted in writing by you [ZIM]" (Doc. 15-1) and argue that where the drafter of a contract sets his own requirements for acceptance but fails to meet them, no valid contract was formed.[3] (Doc. 15 at 4.) Consequently, Plaintiffs contend, the parties did not enter into the IAA and necessarily did not enter into the agreement to arbitrate contained within it. (E.g., Doc. 14 at 2; Doc. 19 at 2; Doc. 29 at 2.)

Defendants point out that the IAA requires a writing only for *Defendants* to be bound and argue that under both Illinois and North Carolina law, a party who acts upon a contract in writing is bound by it even though he did not sign it.

---

[3] Plaintiffs also argue that the requirement of "accepted in writing" means "signed," relying on an unspecified Webster's dictionary and a definition from MacMillian [sic] Illustrated Dictionary for Children 796 (2007) (giving, as an example, "His writing is neat and tidy"). (Doc. 22 at 3.) A "writing" need not be a signature, however. See Webster's Third New International Dictionary 2641 (1986) (defining "writing" as "something written," including "a written or printed paper or document (as a deed, contract, pleading in court)"); Black's Law Dictionary 1748 (9th ed. 2009) (defining a writing to which a signature is attached as a "signed writing"). Even if it did, it would not matter for the reasons noted later in this opinion.

As noted, general state law principles apply to the determination of whether the parties agreed to arbitrate their dispute. First Options, 514 U.S. at 944. Plaintiffs cite to North Carolina law, and Defendants cite to both North Carolina and Illinois law. Because there is no substantive difference between the two on the issue of contract formation, and because both are proper candidates for consideration,[4] the court need not choose between them. Under North Carolina law "[i]t is equally efficacious if a written contract is prepared by one party and delivered to the other party, and acquiesced in by the latter without objection." W.B. Coppersmith & Sons, Inc. v. Aetna Ins. Co., 222 N.C. 14, 21 S.E.2d 838, 840 (1942). Similarly, Illinois courts have held that if a document "is signed by the party being charged, the other party's signature is not necessary if the document is delivered to that party and she indicates acceptance through performance." Meyer v. Marilyn Miglin, Inc., 273 Ill. App. 3d 882, 891, 652 N.E.2d 1233, 1239 (1995).

Plaintiffs point out that where a party specifies the manner of acceptance, acceptance by a different manner will not

---

[4] The IAA provides that, except as controlled by federal law, it is governed by the law of Illinois, where ZIM and all Defendants but Benjamin Laib Zacks reside. (Doc. 11-1 IAA ¶ 21; Doc. 1 ¶ 11; Doc. 13 ¶¶ 1-3.) Plaintiffs are residents of North Carolina. Defendants in Illinois sent the IAA to Plaintiffs in North Carolina, where Benezra apparently signed it and then returned it to Defendants in Illinois. (Doc. 1 ¶¶ 7-8.)

usually result in a contract. See Restatement (Second) of Contracts § 60 (1981) ("If an offer prescribes the . . . manner of acceptance its terms in this respect must be complied with in order to create a contract."). Armed with this proposition, they rely on Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211 (5th Cir. 2003), to argue that the arbitration clause was never adopted by the parties because ZIM failed to accept the IAA in the manner it had required.

In Will-Drill, a party seeking to avoid arbitration asserted that no contract existed because the Proposed Sales Agreement ("PSA") it had signed constituted an offer to purchase that was contingent on *all* owners of the property listed in the PSA joining in the agreement. Several of the proposed sellers decided not to sell their property, however, and they did not sign the PSA. Several of the signing sellers brought an action for specific performance and invoked the arbitration clause in the PSA. Id. at 213. The district court ordered arbitration, but the Fifth Circuit reversed, concluding that it was for the district court to determine as an initial matter whether an agreement had been reached. Id. at 218-19.

Will-Drill is unhelpful to Plaintiffs, however, because the proposed contract was contingent on the participation of *all* potential parties, some of whom had refused. Here, the Defendants seek to bind Benezra, who signed the IAA and

11

delivered it to ZIM. The requirement that the IAA be "accepted in writing" was not imposed on Benezra; rather, it was a condition ZIM imposed on itself and purported to limit application of the IAA *against ZIM*. This is not a case, therefore, where an "offeror, as master of the offer, [] prescribe[d] the manner of acceptance, in which case the offeree would have to comply with that term in order to form a contract." 2 Williston on Contracts § 6:2 (4th ed.) (citing Restatement (Second) of Contracts § 60). Instead, Benezra, by his signature and delivery of investment funds to ZIM, manifested a clear intent to enter into the IAA and to be bound by it; and ZIM, by accepting the funds and investing them, did so as well. Thus, the parties mutually assented to operate under the IAA until Benezra directed ZIM to return funds remaining in his account more than three months into the investment relationship. And even then, Plaintiffs never contended that a contract was not formed but instead sought rescission of it in this lawsuit until they learned, some two and one-half years later, that ZIM failed to sign it.

Under these facts, the court finds that the arbitration agreement in paragraph 18 of the IAA may be enforced against Benezra.[5]

---

[5] Evangelistic Outreach Ctr. v. Gen. Steel Corp., 181 N.C. App. 723, 640 S.E.2d 840 (2007), cited by Plaintiffs, does not alter the result.

12

## 2. Plaintiffs' Claim of Fraudulent Inducement

Plaintiffs argue that even if they entered into the IAA, they were fraudulently induced into entering into the arbitration agreement itself. (Doc. 15 at 4-8; Doc. 22 at 12-19; Doc. 27 at 3.) In the FAC, Plaintiffs allege that Defendants (1) had already "concocted a fraud scheme," (2) inserted the arbitration clause to limit their liability for their fraud and tortious conduct, as well as punitive damages, and (3) phrased the IAA "to prevent Plaintiffs, and others similarly situated, from contacting the FBI, SEC, North Carolina Securities Divisions, and others" to complain while including misleading provisions in the IAA that Benezra was not waiving any such rights. (Doc. 13 ¶ 214; see id ¶¶ 211-13, 215-18.) Though Plaintiffs give lip service to "fraud," their fraudulent inducement argument is founded on a contention that IAA paragraphs 9, 10, and 21 "contradict" the arbitration provision and thus "lure[d]" Benezra into believing that his claims, particularly those arising under securities laws, would be preserved in a court of law. (Doc. 15 at 4-8; Doc. 22 at 14-19;

In Evangelistic the court of appeals concluded that the evidence supported the trial court's conclusion that defendant had not carried its burden of showing that an agreement's second page, which contained an arbitration provision, had been faxed to or received by the plaintiff, who claimed he received and signed only the first page of the fax. Id. at 728, 640 S.E.2d at 843-44. The court affirmed based on the trial court's finding that the defendant did not prove that the plaintiff received a document with the arbitration agreement. In this case, the IAA signed by Benezra contains an arbitration agreement.

13

Doc. 27 at 3.) As such, Plaintiffs' alleged misrepresentations are in fact the express terms of the IAA. Therefore, Plaintiffs' argument is more accurately an attack on the scope of the arbitration provision: namely, an argument that the arbitration provision, when read in conjunction with these three paragraphs of the IAA, fails to encompass their claims or is at least ambiguous. (See Doc. 13 ¶ 218.) No matter how Plaintiffs' argument is characterized, it is unpersuasive.[6]

As noted, the Supreme Court has directed that courts apply ordinary state law principles that govern contract formation and the "federal substantive law of arbitrability." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (internal citations omitted) (citing First Options, 514 U.S. at 944, and Moses H. Cone, 460 U.S. at 24). The court must be satisfied that the parties agreed to arbitrate

---

[6] Even if Plaintiffs' claim could somehow be construed as one of fraudulent inducement, it would still fail. State law would apply to the determination of this claim. Am. Gen. Life, 429 F.3d at 87. Under North Carolina law, the essential elements of fraud in the inducement of a contract are: a false representation or concealment of a material past or existing fact which one had a duty to disclose; made knowingly or recklessly; with the intent to deceive; that was reasonably relied on; causing injury. Harton v. Harton, 81 N.C. App. 295, 298-99, 344 S.E.2d 117, 119-20 (1986). The FAC's fraudulent inducement allegations amount to nothing more than a claim that paragraphs 9, 10, and 21 of the IAA were included simply to lure Plaintiffs into arbitration. Of course, the arbitration provision was not concealed. And in relying on the express terms of the IAA for the alleged fraud, Plaintiffs fail to allege or explain how paragraphs 9, 10, and 21 constitute a material misrepresentation rather than a term of a contract. Finally, any attempt to construe Plaintiffs' fraudulent inducement claim as a general challenge to the IAA requires that it be resolved by the arbitrator. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967).

the particular disputes at issue.  <u>Granite Rock</u>, 130 S. Ct. at 2856.  This is a matter of contract interpretation.  <u>Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.</u>, 96 F.3d 88, 92 (4th Cir. 1996) ("A party cannot be required to submit to arbitration any dispute which he has not agreed to submit." (quoting <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960))).

Plaintiffs rightly point out that under North Carolina law, <u>Cowell v. Gaston County</u>, 190 N.C. App. 743, 745, 660 S.E.2d 915, 917 (2008), any ambiguity in a contract must be resolved against the drafter, here ZIM.  To be sure, the Supreme Court has acknowledged that in determining the scope of an arbitration agreement, the court should apply "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 62-63 (1995).[7]  However, federal policy, grounded in the FAA,

---

[7] In <u>Mastrobuono</u>, the drafter argued that the arbitration agreement did not permit arbitration of a punitive damages claim even though such claims were not expressly barred in the agreement.  The Court, finding a choice-of-law provision in the contract at most introduced an ambiguity, applied the principle that ambiguities to the scope of the arbitration clause itself must be resolved in favor of arbitrability. 514 U.S. at 62.  Unlike the usual case in which the party drafting the arbitration clause asserts an inclusive interpretation (and unlike this case), the drafter in <u>Mastrobuono</u> sought to exclude the claim. Thus, the Court observed, "*Moreover*, [the drafter] cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it."  <u>Id.</u> at 62-63 (emphasis added) (noting the "rationale is

establishes that as a matter of federal law, "any doubts concerning the scope of arbitrable issues," including "construction of the contract language itself," should be resolved in favor of arbitration. _Aggarao v. MOL Ship Mgmt. Co., Ltd._, --- F.3d ---, 2012 WL 887595, at *8 (4th Cir. 2012) (quoting _Moses H. Cone_, 460 U.S. at 24-25). Where there is a validly formed and enforceable agreement to arbitrate that contains an ambiguity, therefore, the court must also apply the federal presumption of arbitrability. _Granite Rock_, 130 S. Ct. at 2858-59; _see_ _Levin v. Alms & Assocs., Inc._, 634 F.3d 260, 266-67 (4th Cir. 2011) (the "heavy presumption of arbitrability requires that when the scope of the arbitrable clause is open to question, a court must decide the question in favor of arbitrability"); _Morgan v. Smith Barney, Harris Upham & Co._, 729 F.2d 1163, 1165 (7th Cir. 1984) (noting that "when contract language is ambiguous or unclear, a 'healthy regard' for the federal policy favoring arbitration requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'" (citations omitted)). As the Fourth Circuit recently put it, "[w]hen interpreting a contract containing an arbitration clause, there is a presumption of

well suited to the facts of this case"). The Fourth Circuit cited _Mastrobuono_ for this proposition in _United States v. Bankers Ins. Co._, 245 F.3d 315 (4th Cir. 2001), a case in which the drafter of the arbitration agreement also sought to limit its reach. _Id._ at 319-21 & n.7. In this case, Defendants do not seek to limit the scope of the arbitration agreement.

arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Peabody Holding Co., LLC v. United Mine Workers of Am., 665 F.3d 96, 104 (4th Cir. 2012) (internal quotation marks and citation omitted).

Applying those standards to this case, the court notes that Paragraph 18 of the IAA provides, in relevant part, for arbitration "[i]n the event of any dispute between us arising out of, relating to or in connection with this Agreement." (Doc. 11-1 IAA ¶ 18.) This language is broad, encompassing not only disputes "arising out of" the IAA but also those "relating to or in connection with" the IAA. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (describing "Any controversy or claim arising out of or relating to this Agreement" as "a broad arbitration clause"); Levin, 634 F.3d at 267-68 (referring to "any dispute" as broad); see also Long v. Silver, 248 F.3d 309, 313 (4th Cir. 2001) (referring to similar language as "very broad").

Plaintiff Benezra's claims fall within IAA paragraph 18's arbitration agreement. His claims of fraud (First Cause), rescission (Second Cause), and false advertising (Eighth Cause) all "relate to" the IAA. Plaintiffs' claims of breach of

17

fiduciary duty, including engaging in prohibited transactions under the Investment Act of 1940 (Third Cause), violation of the Securities and Exchange Act of 1934 (Fourth Cause), violation of the North Carolina Securities Act (Fifth Cause), and unfair and deceptive trade practices (Sixth Cause), all either "relate to" or "arise out of" the IAA. See, e.g., Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27, 238 (1987) (anti-fraud claims under section 10 of the Securities Exchange Act of 1934 generally arbitrable); Prima Paint, 388 U.S. at 402-06 (claim of general fraud in the inducement of contract arbitrable); Levin, 634 F.3d at 262, 269 (investor claims against advisers for negligence, negligent misrepresentation, violation of the Investment Advisers Act of 1940, and breach of contract arbitrable pursuant to an arbitration clause similar to that in the IAA); Long, 248 F.3d at 319 (unfair and deceptive trade practices claim arbitrable); Feller v. Wells Fargo Advisors, LLC, No. 6:11-cv-345-Orl-28GJK, 2011 WL 3331265, at *2 (M.D. Fla. Aug. 3, 2011) (claims of fraud in the inducement and rescission of the contract generally, and not the arbitration provision specifically, arbitrable (citing Buckeye Check Cashing, 546 U.S. at 444-46)); Jones v. Genus Credit Mgmt. Corp., 353 F. Supp. 2d 598, 602 (D. Md. 2005) (misrepresentation and false advertising claim arbitrable); cf. Jeske v. Brooks, 875 F.2d 71, 72, 76 (4th Cir. 1989) (dismissing appeal of

18

district court's order to arbitrate claims brought under the North Carolina Securities Act, although on the ground of lack of jurisdiction to review).

The three paragraphs relied on by Plaintiffs do not limit the arbitration provision. Paragraph 9 acknowledges that securities laws may impose liabilities upon persons acting in good faith and provides that "nothing in this Agreement shall in any way constitute a waiver or limitation of any rights that I [Benezra] may have under any applicable securities laws."[8] Paragraph 21 provides that "Nothing in this Agreement shall constitute a waiver or limitation of any rights I [Benezra] may

---

[8] Paragraph 9 provides:

> Standard of Care. Neither your acceptance of my investment objectives, nor any other provision of this Agreement, shall be considered a guarantee or representation that any specific result will be achieved. You shall not be liable for any losses that I may sustain by reason of either your investment decisions or recommendations or your failure to make decisions or recommendations at any time. Neither you nor your officers, directors or employees shall be liable under this agreement for any action performed or omitted to be performed or for any errors in judgment, except for violation of applicable federal or state law. I understand that the federal and state securities laws may impose liabilities under certain circumstances on persons who act in good faith, and, therefore, that nothing in this Agreement shall in any way constitute a waiver or limitation of any rights that I may have under any applicable securities laws. I understand that your recommendations will be based upon information from sources that you regard as reliable, but I also recognize that you cannot guarantee the accuracy of such information.

(Doc. 11-1 IAA ¶ 9.)

have under applicable securities laws or regulations."[9] And
Paragraph 10 provides that ZIM may require Benezra to indemnify
its costs and expenses incurred in the course of threatened or
actual litigation by a participant, beneficiary, government
agency, or any other person pertaining to either Benezra's
account with ZIM or the IAA, unless a "final judgment of a court
of competent jurisdiction" adjudicates that ZIM breached the IAA
or applicable law or committed negligence or malfeasance.[10]

---

[9] Paragraph 21 provides:

> Construction. Headings used in this Agreement are for
> convenience only, and shall not affect the construction or
> interpretation of any of the provisions of this Agreement.
> Each of the provisions of this Agreement is severable, and
> the invalidity or inapplicability of one or more
> provisions, in whole or in part, shall not affect any other
> provision. This Agreement shall be construed and
> interpreted under the laws of the State of Illinois without
> regard to conflict of laws principles, except to the extent
> controlled by applicable federal law. Nothing in this
> Agreement shall constitute a waiver or limitation of any
> rights I may have under applicable securities laws or
> regulations.

(Doc. 11-1 IAA ¶ 21.)

[10] Paragraph 10 provides:

> Indemnification of Adviser. I agree to indemnify you and
> hold you harmless against all damages, costs and expenses,
> including reasonable attorney's fees and costs, incurred by
> you in the course of any threatened or actual litigation,
> arbitration or administrative proceeding brought by a
> participant, beneficiary, governmental agency or any other
> person pertaining to the Account or otherwise relating to
> this Agreement, provided, however, that I shall not be
> liable in any such case to the extent that, in the final
> judgment of a court of competent jurisdiction, it is
> adjudicated that (i) your action or omission resulted in
> the violation of the provisions of this Agreement or
> applicable law, or (ii) your action or omission constituted

Plaintiffs assert that the purpose of paragraphs 9 and 21 was "to deceive [them] with an understanding that all their rights, as pertaining to applicable securities laws, are not waived or limited in any way by anything in the IAA." (Doc. 22 at 18.) The court cannot say that paragraphs 9 and 21 create ambiguity with respect to the scope of paragraph 18's arbitration provision. Moreover, even if the arbitration provision is somehow ambiguous, it cannot be said with positive assurance that paragraphs 9 and 21 render it susceptible of an interpretation that Plaintiffs' securities law claims would not be subject to arbitration. Paragraphs 9 and 21 preserve substantive rights, but neither paragraph purports to preserve any particular forum in which to decide them. The only mention of a judicial forum appears in paragraph 10's provision that precludes Benezra's liability for indemnification if there is a "final judgment of a court of competent jurisdiction" adjudicating ZIM's breach of the IAA or applicable law or ZIM's tortious conduct. On its face, this provision does not apply to *Plaintiffs'* claims here; whether paragraph 10 applies to any claim for indemnification that ZIM may later bring (and whether paragraph 10 merely reflects paragraph 18's allowance that any

---

negligence or malfeasance with respect to your obligations
and duties under this Agreement.

(Doc. 11-1 IAA ¶ 10.)

21

arbitration award may be enforced by judgment by any competent court) is not before the court.

Plaintiffs also contend that paragraph 9 deceived them into believing they had preserved their rights to punitive damages under the North Carolina Investment Advisers Act, N.C. Gen. Stat. § 78C-38(g). (Doc. 22 at 16-17.) Yet, they point out, paragraph 18 of the IAA states that "[n]o punitive damages shall be awarded." (Doc. 11-1 IAA ¶ 18.) Notably, Plaintiffs do not bring a cause of action under the North Carolina Investment Advisers Act, and thus N.C. Gen. Stat. § 78C-38(g) does not apply.[11]

---

[11] Plaintiffs do bring a claim under the North Carolina Securities Act, N.C. Gen. Stat. § 78A-1 et seq. (Doc. 13 ¶¶ 172-81). The court's independent research reveals that it contains a similar provision allowing for punitive damages if the requirements of Chapter 1D of the General Statutes are met. See N.C. Gen. Stat. § 78A-56(j). Plaintiffs argue only that Benezra was fraudulently induced into entering into the arbitration provision because of paragraphs 9 and 21 and do not raise any claim that the arbitration provision's purported waiver of punitive damages should render it unenforceable as against public policy. On this record, therefore, the court need not determine whether any waiver of punitive damages is unenforceable or renders the arbitration provision void in whole or in part. Compare Hawkins v. Aid Assoc. for Lutherans, 338 F.3d 801, 807 (7th Cir. 2003) ("[C]omplaints about the unavailability of such remedies [including punitive damages] first must be presented to the arbitrator."), and Inv. Partners, L.P. v. Glamour Shots Licensing, Inc., 298 F.3d 314, 316-18 & n.1 (5th Cir. 2002) (noting that "[p]rovisions in arbitration agreements that prohibit punitive damages are generally enforceable"), and Larry's Super, Inc. v. Werries, 253 F.3d 1083, 1086 (8th Cir. 2001) (reserving initially for arbitrator the question of the validity of any waiver of punitive damages under federal claim), and Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 232 (3d Cir. 1997) ("[A]vailability of punitive damages cannot enter into a decision to compel arbitration."), with Booker v. Robert Half Int'l Inc., 413 F.3d 77, 83 (D.C. Cir. 2005) (finding arbitration provision barring punitive damages unenforceable in civil rights action where

Thus, Plaintiffs' claims (at least those of Benezra; York's claims are addressed below) are referable to arbitration, with the exception of those raised by Plaintiffs' request for declaratory relief (Seventh Cause) related to the formation of the arbitration agreement contained in the IAA and the validity of the arbitration agreement, which were addressed in this opinion.

### 3. Defendants covered by Arbitration Agreement

All Defendants seek to invoke the arbitration agreement in the IAA. Plaintiffs do not address whether the remaining Defendants, other than ZIM, can do so. Benezra and ZIM are parties to the IAA, the remaining Defendants are not. However, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Schwabedissen Maschinen, 206 F.3d at 416-17 (citing cases).

ZIR is the parent company of ZIM. (Doc. 4; Doc. 11-1 Lanza Aff. ¶ 5; Doc. 13 ¶ 7.) When allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the

District of Columbia law provided for such damages). Notably, Plaintiffs do not argue that punitive damages are available under their claim under the Securities Exchange Act of 1934. See Hunt v. Miller, 908 F.2d 1210, 1216 n.13 (4th Cir. 1990) (noting that claims for punitive damages are foreclosed in a Rule 10b-5 action by Securities Exchange Act § 28(a), codified at 15 U.S.C. § 78bb(a)).

23

parent to arbitration even though the parent is not formally a party to the arbitration agreement." J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988) (noting that to hold otherwise would effectively thwart federal policy in favor of arbitration); see Long, 248 F.3d at 320 (stating that when claims against shareholders and corporation are "closely intertwined," shareholders may enforce arbitration agreement). A review of the FAC reveals no claim against ZIR which is independent of that against ZIM. Indeed, the FAC typically makes claims against ZIM or against Defendants generally. (See Doc. 13 ¶¶ 88-193.) Thus, ZIR may properly invoke the arbitration clause.

The remaining defendants are officers or directors of ZIM or ZIR: (1) Leonard H. Zacks (Chief Executive Officer of ZIR); (2) Benjamin L. Zacks (President of ZIM); and (3) Mitchel E. Zacks (Managing Director of ZIM). (Doc. 11-1 Lanza Aff. ¶¶ 6-8.) A party to an arbitration agreement may not avoid arbitration by naming defendants not a party to the agreement when those defendants are a party's agents, including employees. Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 562 (M.D.N.C. 2004) ("If plaintiffs could sue individual defendants, they could too easily avoid the arbitration agreement that they signed with corporate entities." (citation omitted)); see Schwabedissen Maschinen, 206 F.3d at 416-17 ("Well-established

common law principles dictate that in an appropriate case a nonsignatory can enforce . . . an arbitration provision within a contract executed by other parties." (citing cases)). Here, Plaintiffs' claims against ZIM and the other Defendants are "inherently inseparable" and "closely intertwined" and apply to all Defendants, corporations and individuals alike. All of the FAC allegations regarding individual Defendants involve conduct occurring in their official capacities with ZIM or ZIR. See Collie, 345 F. Supp. 2d at 562 ("By allowing the individual defendants the protection of the [arbitration agreement], the court prevents Plaintiff from circumventing arbitration by suing an individual defendant."). Thus, these Defendants may also invoke the arbitration agreement.

Under the circumstances of this case and in light of the allegations in the FAC, therefore, the court finds that the factual and legal bases for Plaintiffs' claims against Defendants are inherently inseparable and closely intertwined, and that all Defendants may properly compel arbitration to the same extent as ZIM.

### 4. Plaintiff York's Claims

Defendants move to compel York to arbitration or, in the alternative, to dismiss her claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11; Doc. 12 at 17-18.) Defendants also challenge York's standing. (Doc. 12 at 17; see

25

Doc. 11 (bringing motion, inter alia, under Rules 12(b)(1) and 12(b)(6)).) Plaintiffs do not directly respond. (See Docs. 14, 15, 19, 20, 22, 23, 27, 29.)

Under certain circumstances, an arbitration agreement may be enforced against someone who did not agree to it. For example, under principles of contract law and agency, non-signatories can be bound to arbitration agreements under theories of incorporation by reference, assumption, agency, veil piercing/alter ego, and equitable estoppel. See Schwabedissen Maschinen, 206 F.3d at 417. It is not readily apparent that any of these theories applies to York's claims. Most notably, equitable estoppel, a commonly invoked theory, applies where a party denies she has signed an arbitration agreement but simultaneously seeks the benefits from the contract containing it. R.J. Griffin & Co. v. Beach Club II Homeowners Assoc., Inc., 384 F.3d 157, 161-62 (4th Cir. 2004); Schwabedissen Maschinen, 206 F.3d at 418. Here, by contrast, York, in the FAC, repudiates the IAA on the ground that it is invalid because her husband, Benezra, revoked his signature before ZIM signed it. Thus, because Defendants have failed to articulate any basis for imposing the arbitration agreement on York,[12] the

---

[12] York is not named as a joint account holder. (Doc. 11-1 Lanza Aff. ¶ 13.) Defendants do state that she is a "beneficiary" of Benezra's account. (Id.) In certain circumstances, an intended beneficiary may be bound by an arbitration clause in a contract. E.g., McCutcheon v. THI of S.C. at Charleston, LLC, No. 2:11-CV-02861, 2011 WL 6318575

Case 1:11-cv-00596-TDS-LPA   Document 32   Filed 03/30/12   Page 26 of 31

court will examine whether she has stated a claim upon which relief may be granted.

The purpose of a Rule 12(b)(6) motion to dismiss is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and draw all reasonable inferences in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), a plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. Rule 12(b)(6) protects against meritless litigation by requiring sufficient

(D.S.C. Dec. 15, 2011) (discussing South Carolina law). However, Defendants have not cited any case where the non-signatory defendant did not also seek to benefit from the contract, thus invoking estoppel grounds as well.

factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 555, 570; see Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949-51 (2009).

Despite its length, the FAC, taken in the light most favorable to York, contains no material allegation forming the basis for the Defendants' liability as to her. The FAC alleges that Benezra signed "papers" related to the transaction and that his signature was procured by fraud. (Doc. 13 ¶¶ 143, 149.) York's name, by contrast, does not appear on the IAA. Further, the IAA states that the account is the "Steve Benezra Traditional IRA" and that the "undersigned client," which refers solely to Benezra, "agrees to engage" ZIM "as adviser for the Account named above." (Doc. 13-1.)

The FAC also alleges that Benezra had "intelligently managed" the retirement fund at issue himself previously and concluded that he needed assistance of an investment adviser, investigated Defendants and, based on their representations to him, invested $550,000 of his retirement fund with ZIM. (Doc. 13 ¶¶ 4-23 ("General Preamble Allegations"), 45-51 ("The Representations").) The same is true with respect to "The Fraud, the Bait and Switch" section of the FAC. (Id. ¶¶ 52-61.) The FAC charges that "Zacks [i.e., Defendants] misrepresented

28

its obligations to Dr. Benezra, and defrauded him and thousands of other investors." (Doc. 13 ¶ 61.) Allegations related to Defendants' actions after the investment also reference only Benezra. (Id. ¶¶ 62-70 ("The Result").) The FAC, in the section styled "Rescission of the Contract," alleges that Defendants "lured Dr. Benezra," that he never would have signed any papers but for Defendants' "deceitful lies," and that "Dr. Benezra is entitled to rescission under substantive law of the State North Carolina." (Id. ¶¶ 83-87.)

The only factual allegations relating to York merely identify her as Benezra's wife (id. ¶ 3), list her residence in Hillsborough, North Carolina (id.), and allege that Defendants met with her and Benezra "for purposes of inducing them to do business and to give monies to said Defendants" (id. ¶ 90). Although the FAC routinely lists the "Plaintiffs" collectively in the causes of action, the factual allegations relate to Benezra. For example, on several occasions the invested funds in question are referred to collectively as "Plaintiffs'" (id. ¶¶ 95, 111, 129, 130, 158, 160; see id. ¶ 104 ("Benezra and his family")), but the FAC alleges factually that they were from Benezra's retirement savings (e.g., id. ¶¶ 4-33, 36, 44, 48, 62, 66, 67, 114). And, where claims allege that Defendants defrauded "Plaintiffs" (e.g., id. ¶¶ 126, 127, 167, 175, 188, 190), earlier factual allegations of the same events speak only

to alleged fraud against Benezra (e.g., id. ¶¶ 4-33, 61, 68, 105, 106).

By failing to address Defendants' motion to dismiss York's claims (Doc. 11 at 3; Doc. 12 at 17-18; Doc. 18 at 2), Plaintiffs have not pointed to, nor can the court find, any allegations which "nudge[] the[] claims [of York] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, the court concludes that the FAC fails to allege sufficient facts to state a plausible claim with respect to York, and her claims will be dismissed without prejudice.[13]

### 5. Stay of Action

Defendants argue that the court should dismiss the action because all issues should be referred to arbitration. In the alternative, they seek a stay of all proceedings pending the arbitration. Though the court may have the authority to dismiss the action, see, e.g., Aggarao, --- F.3d at ---, 2012 WL 887595, at *15, and Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992), a stay is consistent with the provisions of the FAA, which provides that the court shall stay an action until the arbitration is complete. 9 U.S.C. § 3. Therefore,

---

[13] The court, therefore, need not consider Defendants' alternative arguments that York lacks standing and whether her claims, if plausibly stated, would be subject to arbitration. To be sure, nothing in this disposition should be construed to prevent York from participating in any arbitration proceeding.

the court will stay this action pending resolution of the arbitration.

## III. CONCLUSION

For the foregoing reasons, IT IS THEREFORE ORDERED that:

1.    Defendants' Motion to Strike (Doc. 16) is DENIED;

2.    Defendants' Motion to Compel Arbitration and to Dismiss or Stay Proceedings as Restated (Docs. 11, 18) is GRANTED insofar as it seeks to compel arbitration of Plaintiff Steven Benezra's claims not otherwise disposed of in this Order and insofar as it seeks to dismiss the claims of Plaintiff Melissa York, and her claims are DISMISSED WITHOUT PREJUDICE;

3.    Because the positions of the parties were set out adequately in the briefing, Plaintiffs' Request for Hearing (Doc. 23) is DENIED;

4.    This case is STAYED pending further order of the court. The Clerk of the Court is directed to administratively close the file. The parties shall file a joint report of arbitration every ninety (90) days. Failure to file such reports may result in dismissal of the action.

                                    /s/   Thomas D. Schroeder
                               United States District Judge


March 30, 2012